UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JENNIFER WILCOX,                                       :
                         Plaintiff,      :
                                 :
    -against-                                           :        11 Civ. 8606 (HB)
                                 :
CORNELL UNIVERSITY, WEILL CORNELL    :        OPINION & ORDER
MEDICAL COLLEGE, JOAN AND SANFORD     :
I. WEILL MEDICAL COLLEGE AND               :
GRADUATE SCHOOL OF MEDICAL              :
SCIENCES OF CORNELL UNIVERSITY,        :
JENNIFER L. PICKARD, individually, and    :
ANGELA CHARTER, individually,                :
                         Defendants.     :
------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

      Plaintiff Jennifer Wilcox brings this action for gender-based discrimination and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.*, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.*  Defendants move for summary judgment. For the reasons stated below, Defendants' motion is GRANTED.

## BACKGROUND

      Plaintiff was an accounts receivable specialist at Defendant Cornell University's Weill Cornell Medical College (hereinafter "WCMC").  She began her employment on February 28, 2011.  But due to an illness related to her pregnancy, her last day at work was just a tad more than three weeks later on March 22, 2011.  On March 28, Plaintiff's supervisor told her that she would qualify for short-term disability benefits if her absence continued through March 29. Plaintiff then formally requested benefits and advised WCMC that she would be unable to return to work until April 27, 2011.  (Defs.' 56.1 Ex. 6, at 000009.)

      Unfortunately, after receiving Plaintiff's paperwork, Defendant Angela Charter Lent, WCMC's Director of Recruitment and Employee Development, advised Plaintiff that she was ineligible for short-term disability benefits.  Since according to WCMC's benefits policy, only employees with "at least four weeks of service are eligible" for short-term disability benefits, Lent wrote to Plaintiff on April 3 to inform her that her employment "[would] be terminated

1

effective March 23, 2011"—the first day of Plaintiff's absence. (Defs.' 56.1 Ex. 7; *id.* Ex. 8, at 000017.) This termination date was based upon WCMC's definition of "service" as "being at work." (Lent Dep. 12:6–9.) While WCMC's written policy did not expressly define the term "service," Lent maintains that calculating service time from the date an employee becomes disabled is standard policy. (*Id.* 11:16–13:8.) WCMC then offers such individuals reemployment upon their ability to return to work. (Lent Aff. ¶ 6.)

In support of that policy, Lent also wrote to Plaintiff in the same April 3 email that "in order to accommodate [her] disability," WCMC would "refrain from immediately filling [Plaintiff's] job." (Defs.' 56.1 Ex. 7.) Reinstatement was contingent upon Plaintiff's ability "to begin working on or before April 27, 2011, as designated by [her] physician." (*Id.*) According to Lent, WCMC policy requires that "once a doctor puts someone out, the doctor needs to clear them" before they may return to work. (Lent Dep. 64:10–14.) Immediately after learning that WCMC would not provide short-term disability benefits and that her position had been terminated, Plaintiff concluded that WCMC was discriminating against her because of her pregnancy, and on April 5, 2011, she filed an EEOC charge alleging gender discrimination. Soon after her termination, Plaintiff relocated to Georgia to be with her family and save money.

On April 14, Lent again wrote to Plaintiff that "[b]ased on the medical documentation [she] ha[d] provided," Plaintiff would "be cleared to work on April 28th." (*Id.* Ex. 10.) Lent then asked Plaintiff to confirm her intent to return. But Plaintiff admits that she never responded directly to this inquiry. (Pl.'s 56.1 ¶ 27.) Instead, Plaintiff spoke with WCMC human resources personnel that day and informed them that "she [did] not have the money to see the doctor to get the return to work clearance she need[ed]." (Rose Aff. Ex. F.) Nor was Plaintiff able to pay the $600 COBRA premium for post-termination insurance coverage.

Lent reiterated her offer of reemployment by letter on June 3, 2011. (Defs.' 56.1 Ex. 11.) Plaintiff was still pregnant in June 2011. (Lent Aff. ¶ 9.) But according to Plaintiff, she never received this letter because it was not sent to her new home in Georgia. On June 22, Lent again wrote to Plaintiff, apparently to the correct address, and stated that WCMC had "been holding the position for [her] since [she] left the position on March 22, 2011 for medical reasons." (Defs.' 56.1 Ex. 12.) But Lent advised that WCMC needed to fill that position "no later than July 11, 2011." (*Id.*) Plaintiff responded on June 30, noting that she was unable to meet the July 11 deadline but that she could return by at least August 8 and "possibly" by July 25. (Rose Aff.

Ex. I.)  Yet WCMC declined Plaintiff's offer, insisting that July 11 was a hard deadline.  After holding the position open for over three months, WCMC then hired someone else to fill Plaintiff's position.

## DISCUSSION

"A motion for summary judgment may be properly granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2)).  In analyzing summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citing *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554–55 (1990)).

### A.  Pregnancy Discrimination

Under Title VII, the NYSHRL, and the NYCHRL, discrimination on the basis of a woman's pregnancy—including because of any "related medical conditions"—constitutes discrimination "on the basis of sex."  *Reilley v. Revlon, Inc.*, 620 F. Supp. 2d 524, 544 (S.D.N.Y. 2009) (quoting 42 U.S.C. § 2000e(k)); *see also Quaratino v. Tiffany & Co.*, 71 F.3d 58, 63 (2d Cir. 1995) (noting that the NYSHRL "provides the same sort of protection" regarding pregnancy discrimination as Title VII); *EEOC v. Bloomberg L.P.*, No. 07 Civ. 8383, 2013 WL 4799161, at *9 (S.D.N.Y. Sept. 9, 2013) (pregnancy discrimination claim under NYCHRL requires only that Plaintiff demonstrate "that she has been treated less well than other employees because of her gender" (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013))).  Employers are thus obligated to "apply the commencement and duration of leave, the availability of extensions, and reinstatement after leave on the same terms as applied to other disabilities."  *Reilley*, 620 F. Supp. 2d at 544 (citing 29 C.F.R. § 1604.10(b)).  Thus, to make out her pregnancy discrimination claim, "the plaintiff must show that she was treated differently from others who took leave or were otherwise unable or unwilling to perform their duties for reasons unrelated to pregnancy or that she simply was treated differently because of her pregnancy." *Bloomberg L.P.*, 2013 WL 4799161, at *4 (citing *Velez v. Novartis Pharm. Corp.*, 244 F.R.D. 243, 264 (S.D.N.Y. 2007)).

3

At summary judgment, both Title VII and NYSHRL discrimination claims are subject to *McDonnell Douglas*'s "familiar burden-shifting framework." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008); *see Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010) ("We review discrimination claims brought under the NYSHRL according to the same standards that we apply to Title VII discrimination claims."). Under *McDonnell Douglas*, to establish a prima facie case, Plaintiff must show that "(1) she belonged to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Bloomberg L.P.*, 2013 WL 4799161, at *5 (citing *Mathirampuzha*, 548 F.3d at 78). If Plaintiff makes her prima facie case, the burden of production shifts to Defendants "to offer a non-discriminatory justification" for their actions. *Id.* If Defendants meet that burden, Plaintiff must show that those reasons "were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Garcia v. Hartford Police Dep't*, 706 F.3d 120, 127 (2d Cir. 2013) (quoting *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004)).

But for NYCHRL discrimination claims, to survive summary judgment "the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason." *Mihalik*, 715 F.3d at 110 n.8. Like under the *McDonnell Douglas* framework, a defendant may still "present evidence of its legitimate, non-discriminatory motives to show the conduct was not caused by discrimination." *Id.* But summary judgment is available under the NYCHRL "only if the record establishes as a matter of law that 'discrimination play[ed] *no* role" in that defendant's actions. *Id.* (alteration in original) (quoting *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38, 40 n.27 (1st Dep't 2009)).

**1. Title VII and NYSHRL Claims**

Here, even assuming a prima facie case under the *McDonnell Douglas* framework, Plaintiff's discrimination claims fail under both Title VII and the NYSHRL. Plaintiff first urges that Defendants discriminated against her when Lent terminated her retroactive to the date she became disabled and was no longer able to come to work. Second, Plaintiff urges that Defendants' refusal to extend to her a genuine offer of reemployment, complete with accommodating her schedule for relocating from Georgia back to New York, was discriminatory. For the retroactive termination, Defendants cite their facially neutral policy of measuring the end

of employment from the date that the employee no longer comes to work. And Defendants dispute the claim that their multiple offers of reemployment were not genuine.

Plaintiff offers no evidence that Defendants' explanation for her termination is a pretext for pregnancy discrimination. She urges that the strict application of WCMC's leave policies and restrictive conditions on her return—including backdating her termination, the four-week vesting requirement, requiring her to pay her doctor for medical clearance before returning to work, and the requirement that Plaintiff return by July 11, 2011—are evidence that WCMC's offers to reemploy her were false. But WCMC's leave policies, while perhaps placing a burden upon Plaintiff, are not themselves evidence of discriminatory animus. And Plaintiff offers nothing beyond her own speculation that any of WCMC's conditions for her return were invented because of her disability or designed to prevent her from accepting WCMC's reemployment offers. Such allegations are insufficient to sustain a discrimination claim. *See Isaac v. City of N.Y.*, 701 F. Supp. 2d 477, 489 (S.D.N.Y. 2010) (speculative assertions of discriminatory animus are insufficient at summary judgment).

Nor is there evidence that WCMC treated any other employee with comparable service time better than it treated Plaintiff, no matter how "service" is defined. For the one individual who was rehired after WCMC's policies were applied to him, there is no evidence suggesting that WCMC made greater accommodations for him than it made for Plaintiff. (*See* Lent Aff. ¶ 6.) And while neither party offers evidence of the service time other pregnant employees worked before WCMC offered benefits, it is undisputed that WCMC provided short-term disability benefits related to pregnancy for 351 employees in the two years leading up to Plaintiff's lawsuit. (Lent Aff. ¶ 7.) These circumstances do not support a finding of gender animus. *See Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95–96 (2d Cir. 1999) (no discriminatory animus shown where employer terminated plaintiff instead of accommodating disability where plaintiff failed to present evidence that similarly-situated comparator was treated differently).

And finally, Plaintiff urges as evidence of discrimination that WCMC's hiring of a new employee was actually more costly for WCMC than permitting Plaintiff to return after the July 11 deadline. But even if true, the Court "does not sit as a super-personnel department that reexamines an entity's business decisions" so long as discriminatory animus does not motivate those decisions. *Vuona v. Merrill Lynch & Co.*, 919 F. Supp. 2d 359, 377 (S.D.N.Y. 2013)

(quoting *Martin v. MTA Bridges & Tunnels*, 610 F. Supp. 2d 238, 251 (S.D.N.Y. 2009)).  Indeed, holding Plaintiff's position open for over three months—two months beyond the original date by which Plaintiff herself set for her proposed return—is hardly evidence of discrimination.  And without this evidence, Plaintiff's claims under Title VII and the NYSHRL must fail.

### 2. NYCHRL Claims

Plaintiff's NYCHRL claims fare no better.  Taken in the light most favorable to Plaintiff, WCMC made Plaintiff's termination retroactive to the beginning of her leave of absence shortly after learning of her disability.  But as explained above regarding her Title VII and NYSHRL claims, Plaintiff fails to show that gender animus played any role in that termination.  *See Bloomberg L.P.*, 2013 WL 4799161, at *29–30 (summary judgment under NYCHRL available where no evidence rebutted defendant's stated reason).  Indeed, Plaintiff fails to demonstrate any evidence that any of Defendants' reasons or their offers of reemployment are false.  Under these circumstances, Plaintiff's NYCHRL claims fail as well.

### B. Retaliation

Retaliation claims under Title VII and the NYSHRL are also subject to *McDonnell Douglas* burden shifting.  *Id.* at *6.  To establish a prima facie case of retaliation under that framework, Plaintiff must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)).  And under the NYCHRL, Plaintiff "must show that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  *Mihalik*, 715 F.3d at 112 (internal citations omitted).  Thus, under all three statutes, Plaintiff must demonstrate some evidence that "link[s] her complained-of [treatment] to a retaliatory motivation."  *See Williams*, 872 N.Y.S.2d at 35.

Here, Plaintiff fails to demonstrate that link.  First, her retroactive termination and the strict application of WCMC's leave policies denying her benefits occurred before any of her complaints of discrimination.  Because this adverse action took place before Plaintiff engaged in any protected activity, she cannot establish a causal link between her termination and her complaints.  *See Uddin v. City of N.Y.*, 427 F. Supp. 2d 414, 433 (S.D.N.Y. 2006) (noting that

"adverse actions which take place before defendant [became] aware of the protected activity" cannot support retaliation claim (citing *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))). To the extent that Plaintiff complains that the timing or medical-clearance requirements placed upon her return were retaliatory, she also fails to establish any causal link. Again, there is no evidence that WCMC's benefits policies were applied any less strictly to any other employee. *See Williams*, 872 N.Y.S.2d at 35 (no NYCHRL claim where the same actions were taken against non-complaining employees). And WCMC continued to offer Plaintiff employment through July 11, 2011—long after her informal complaints as well as her April 5, 2011 EEOC charge. No retaliatory nexus exists on these facts. *See Isaac*, 701 F. Supp. 2d at 493 (noting that temporal proximity may be insufficient where adverse action "occurred three months after the EEOC complaint was filed" (citing *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990))); *see also Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (observing that in cases relying on temporal proximity alone to establish causality, "temporal proximity must be 'very close'"). Nor has Plaintiff offered any evidence demonstrating that anyone at WCMC knew of her EEOC complaint at the time they took adverse action, as required to make out a prima facie case. *Hicks*, 593 F.3d at 164. Accordingly, Plaintiff's retaliation claims under Title VII, the NYSHRL, and the NYCHRL also fail.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is instructed to close this motion, close this case, and remove it from my docket.

**SO ORDERED.**

Date: 11/14/13
New York, New York

HAROLD BAER, JR.
United States District Judge

7